Jessie D. Merwin et al., Appellees, v. Helen D. Stevenson et al., Appellants.

## Gen. No. 8,044.

1. WILLS—*construing by testator's intention.* The intention of the testator which governs the construction of his will is that intention which he has expressed by the language he has used in the will, viewing the whole will and every part, and not some intention he may have had in his mind.

2. WILLS—*rejection of meaningless construction.* That construction of a will should be adopted which gives effect to all the provisions therein rather than a construction which renders a portion of the will meaningless.

3. WILLS—*rejection of repugnant clauses.* One clause of a will cannot be rejected as repugnant to another except as a last resort and will not be so rejected if the one clause is made void by the construction necessary to make it repugnant to the other.

4. WILLS—*adopting construction that vests title.* In case of doubt, that construction of a will should be adopted which leads to a vesting of the estate as being favored by law.

5. WILLS—*construction of bequest to "either one" of two legatees.* A provision of a will that "in case of the death of either one of my said grandsons leaving no widow, child . . ." the share of such grandson should go one-half to his brother and one-half to other heirs, was construed to refer to the death of the first grandson dying, and as he left a widow surviving, neither the other heirs nor the brother, who died a bachelor, were held to take anything under that provision.

6. WILLS—*construction of two provisions of one clause as not repugnant.* A provision of a will that in case a grandson died without leaving widow or child, one-half of his share should go to certain other of the testator's grandchildren cannot be construed as independent of and repugnant to another provision of the clause that the other one-half should go to such grandson's brother, and the fact such brother had predeceased him and left a surviving widow made ineffective that provision, and the whole clause.

Appeal by defendants from the Circuit Court of McLean county; the Hon. STEVENS R. BAKER, Judge, presiding. Heard in this court at the October term, 1926. Reversed and remanded with directions. Opinion filed October 31, 1927.

OGLEVEE & FRANKLIN and ROSENTHAL, HAMILL & WORMSER, for appellants; EVERETT OGLEVEE, B. A. FRANKLIN, LESSING ROSENTHAL and WILLARD L. KING, of counsel.

JOHN F. WIGHT and MORRISSEY & MORRISSEY, for appellees; JOHN F. WIGHT, JOHN O. MORRISSEY and JOHN J. MORRISSEY, of counsel.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

This is an appeal from the decree of the circuit court of McLean county, rendered on a bill to construe the will of William O. Davis, who died May 22, 1911. Originally all the parties to this suit joined as complainants in the bill, but subsequently, by leave of court, the appellants, Helen D. Stevenson, Adlai E. Stevenson and Elizabeth D. Stevenson, withdrew as complainants and became parties defendant and filed an answer to the bill. The will was executed by William O. Davis on January 11, 1908, and a codicil thereto was executed by him November 28, 1910.

At the time of the execution of the will and at the time of the death of the testator his family consisted of a son, Hibbard O. Davis, and two daughters, Helen Davis Stevenson and Jessie Davis Merwin. Hibbard O. Davis had two children who were both in being at the time the will was made, viz.: Louis E. Davis (whose first name in the will is spelled "Lewis") and William O. Davis. Helen Davis Stevenson, at the time of the execution of the will, had two children both of whom are still living, viz.: Adlai E. Stevenson and Elizabeth D. Stevenson, who, with their mother, said Helen Davis Stevenson, are the appellants on this appeal. Jessie Davis Merwin had three children at the time of the execution of the will, all of whom are still living, viz.: Jesse Davis Merwin, Hester E. Merwin and Loring C. Merwin, who, with their mother, said Jessie Davis Merwin, are appellees here.

The questions presented for consideration on this appeal involve only that portion of the third section of said will which is as follows:

"THIRD: I give, bequeath and devise to my son, Hibbard O. Davis, three hundred and ninety-five (395) shares of capital stock of The Pantagraph, a corporation organized under the laws of the State of Illinois, he to have the control, use, profits, dividends and income therefrom for and during his natural life and upon the death of my son, Hibbard O. Davis, said

three hundred and ninety-five (395) shares of stock to go in equal parts to my grandsons William O. Davis and Lewis E. Davis, provided, however, that my said grandsons, William O. Davis, and Lewis E. Davis, shall only come into possession and control during their lifetime of one-half (½) of the shares coming to them respectively under this provision of my Will, and neither of them shall receive into his possession and control said one-half (½) of said shares of stock until January 1st, 1930, and the remaining one-half (½) of shares coming to each of my said grandsons . respectively under the provisions of this Will shall never come into their possession and control but the same shall be placed in the hands of C. C. Marquis, James Oscar Willson and Louis O. Eddy as trustees who shall manage and control the same and pay over to said grandsons the net income due each respectively from said shares of stock. It is hereby declared to be my intention that said grandsons shall each respectively on the 1st day of January 1930 come into the possession and control in equal parts of one-half (½) of the shares mentioned in this item of my Will. And I further declare it to be my intention that the remaining one-half (½) of said Capital Stock coming in equal parts to my said grandsons, William O. Davis and Lewis E. Davis, under the provisions of this Will, shall never come into their possession but shall be placed in the hands of the trustees above named for the purpose hereinabove stated. Provided, however, that my grandsons, William O. Davis and Lewis E. Davis, shall not come into the possession or control of any of said shares of stock nor shall said trustees take possession or control of any part or portion thereof during the lifetime of my son, Hibbard O. Davis, for it is my intention as above declared that my son, Hibbard O. Davis, shall have the control, use, profits, dividends and income of all said shares of stock during his lifetime as provided by the foregoing provi-

sions of this Will. In case of the death of either one of my said grandsons, leaving no widow, child or children surviving him, one-half (½) of the said shares of stock going to such deceased grandson, under the provisions of this Will, shall go absolutely to his brother, the surviving grandson and the remaining one-half (½) of said shares going, under the provisions of this Will, to such deceased grandson shall, provided he leaves no widow, child or children surviving him, go to my other grandchildren, Elizabeth D. Stevenson, and *Aldai* E. Stevenson, children of my daughter, Helen D. Stevenson, and to Jesse Davis Merwin, Hester E. Merwin and Loring C. Merwin, children of my daughter, Jessie D. Merwin, share and share alike.

"In case both my said grandsons, William O. Davis and Lewis E. Davis, shall be deceased before January 1, 1930 leaving no child, children nor widow or widows surviving them, I will and direct that on the death of my son, Hibbard O. Davis, one-half of said three hundred and ninety-five (395) shares of stock willed to my son, Hibbard O. Davis, for life shall become intestate estate and be distributed to my heirs according to the statutes of descent of the State of Illinois and the other one-half (½) of said three hundred and ninety-five (395) shares of stock shall go to my other grandchildren as above provided."

The testator's grandson, Louis E. Davis, mentioned in the above section of the will, died intestate on May 10, 1918, leaving him surviving his widow, Styleta K. Davis, who has since remarried and is now Styleta K. Hoffman. His grandson, William O. Davis, (styled by counsel as William O. Davis II,) died May 22, 1919, intestate, a bachelor and without any descendant. Hibbard O. Davis, the testator's son and the father of Louis and William, above mentioned, died July 16, 1925. Prior to the death of Hibbard O. Davis, his sisters Helen D. Stevenson and Jessie D. Merwin

purchased in equal shares, whatever interest had passed to Styleta K. Hoffman in the 395 shares of stock disposed of by the third section of the will, and Hibbard O. Davis had assigned to the Peoples Bank of Bloomington, as trustee, the original certificate for the 395 shares of stock, with the provision that upon his death all his interest in said stock should pass to his sisters, Helen D. Stevenson and Jessie D. Merwin, for life, share and share alike, and upon the death of each of them their respective children should receive their mother's share of said stock.

The question for determination here is what estate did William O. Davis II take under the will mentioned in the original 395 shares of stock bequeathed to Hibbard O. Davis, his father, for life with remainder to him and his brother Louis.

The construction contended for by appellees and upheld by the decree is that a vested remainder in the stock in equal shares was bequeathed to each of said grandsons, Louis E. Davis and William O. Davis II and that upon the death of either one of said grandsons without leaving a widow, child or children, the executory bequest over consisted of two severable, distinct gifts, viz.: one-half of the stock to the surviving brother of such grandson so dying, and the other half to the testator's five grandchildren, the children of his two daughters, which bequests were separate and distinct, each complete in itself and not dependent upon the taking effect of the bequest of the other half; and that upon the death of William O. Davis II without leaving any widow or child, the said executory bequest in the will took effect and that the testator's grandchildren above mentioned, took one-half of said shares of stock and as to the other half of said stock the bequest failed because when William O. Davis II died he left no surviving brother and this half of the stock descended to his father, Hibbard O. Davis, who was his only heir.

Appellants contend that the entire interest of said William O. Davis II passed upon his death, unaffected and undiminished, by any divestiture, to his father, Hibbard O. Davis, as his sole next of kin and passed, by virtue of the assignment of Hibbard O. Davis, to the Peoples Bank of Bloomington, as trustee, for Jessie D. Merwin and Helen D. Stevenson during their respective lives, and, upon the death of each, to their respective children in equal shares.

It is conceded by all parties, and so held by the chancellor, that under the will testator's grandsons, Louis E. Davis and William O. Davis II took vested interests in the 395 shares of Pantagraph stock subject to the life estate of their father, Hibbard O. Davis and that these vested interests were subject to divestiture by the conditions of defeasance mentioned in said section, and the real point in controversy is the construction to be placed upon these clauses. Counsel in their briefs and arguments for convenience have separated these from the rest of section 3 and have designated them clauses "A" and "B" and for a like reason we do the same here, to-wit:

### CLAUSE A

"In case of the death of either one of my said grandsons, leaving no widow, child or children surviving him, one-half (½) of the said shares of stock going to such deceased grandson, under the provisions of this Will, shall go absolutely to his brother, the surviving grandson and the remaining one-half (½) of said shares going, under the provisions of this Will, to such deceased grandson shall, provided he leaves no widow, child or children surviving him, go to my other grandchildren, Elizabeth D. Stevenson and *Aldai* E. Stevenson, children of my daughter, Helen D. Stevenson, and to Jesse Davis Merwin, Hester E. Merwin and Loring C. Merwin, children of my daughter, Jessie D. Merwin, share and share alike."

## CLAUSE B

"In case both of my said grandsons, William O. Davis and Lewis E. Davis, shall be deceased before January 1, 1930, leaving no child, children nor widow or widows surviving them, I will and direct that on the death of my son, Hibbard O. Davis, one-half of said three hundred and ninety-five (395) shares of stock willed to my son, Hibbard O. Davis, for life shall become intestate estate and be distributed to my heirs according to the statutes of descent of the State of Illinois and the other one-half (½) of said three hundred and ninety-five (395) shares of stock shall go to my other grandchildren as above provided."

While cases on the construction of wills are valuable chiefly in their applications of the law to the particular provisions of the wills under consideration, yet there are certain elementary rules which must guide the courts in the construction of all wills. The intention of the testator, if not inconsistent with the established rules of law or public policy, must govern. *Meins v. Meins,* 288 Ill. 463; *Walker v. Walker,* 283 Ill. 11; *Perry v. Bowman,* 151 Ill. 25. The intention of the testator is that intention which the testator has himself expressed by the language used in the will and not an intention he may have had in his mind, but did not express. *Pool v. Pool,* 300 Ill. 557; *Hollenbaugh v. Smith,* 296 Ill. 558; *Moeller v. Moeller,* 281 Ill. 397; *Smith v. Chester,* 272 Ill. 428. The whole will in all its parts and every clause therein, must be considered in ascertaining such intent. *Cole v. Cole,* 292 Ill. 154; *Noth v. Noth,* 292 Ill. 536. When one construction renders a portion of the will meaningless and another gives the effect to all the provisions therein, it is the duty of the court to adopt the latter construction. *Rasmusson v. Unknown wife of William Hoge,* 293 Ill. 101; *Walker v. Walker,* 283 Ill. 11; *Defrees v. Brydon,* 275 Ill. 530; *Eyer v. Williamson,* 256 Ill. 540. A clause in

a will cannot be rejected as repugnant to another clause if the construction which must be placed upon the former clause to sustain the claim of repugnancy renders it void, and only as a last resort will a court hold conflicting provisions of a will irreconcilably repugnant. *Healy v. Eastlake,* 152 Ill. 424. The law favors the vesting of estates and when there is any doubt, that construction will be adopted which leads to that result. *Pearson v. Hanson,* 230 Ill. 610.

William O. Davis, the testator, in his lifetime was a man of education and high intelligence. He established a newspaper in the City of Bloomington in 1868. In 1907 he incorporated the business under the name of "The Pantagraph," and afterwards this was changed to "The Daily Pantagraph." The capital stock of the corporation consisted of eight hundred shares which in 1907 were worth $250 per share. When he died he was the owner of 789 shares. The newspaper had a large circulation and influence in that part of the state and was a prosperous going concern. He was a man of wealth and prominence and his will presents a complete and comprehensive scheme for the distribution of his estate. It is apparently drawn with great care and particularity and undoubtedly with legal advice. We must look for the intention of the testator in the words of the will and cannot presume that he intended a disposition of his property other than as expressed therein by him. By the third section of the will the testator bequeathed 395 shares of the stock of The Pantagraph to his son, Hibbard O. Davis for life, with remainder over in equal parts to his grandsons, William O. Davis II and Louis E. Davis. Then follows two clauses of defeasance, the first (designated as clause "A") provides for the disposition of the shares of stock in case of the death of either William O. Davis II or Louis E. Davis, leaving no widow, child or children surviving him; and the second (designated herein as clause "B") provides for the disposition of

said shares in case of the death of both William O. Davis II and Louis E. Davis leaving no widow, child or children surviving them. Thus clause A pertains to the death of one of said grandsons leaving no widow, etc., while clause B pertains to the death of both grandsons leaving no widow, etc.

Clause A provides that in case of the death of *either one* of said grandsons leaving no widow, etc., surviving him, one half of said shares of stock going to such deceased grandson under the provisions of the will, shall go *absolutely* to his brother, the *surviving* grandson, *and* the remaining one-half of said shares shall go to other named grandchildren of the testator. The chancellor held in the court below that the words "and the remaining one-half (½) of said shares going, under the provisions of this Will, to such deceased grandson shall, provided he leaves no widow, child or children surviving him, go to my other grandchildren (naming them) etc.," created a separate and distinct estate and that upon the death of William O. Davis II, who left no widow or child surviving him, the other grandchildren mentioned in this clause took said one-half of said shares absolutely. It will be remembered that Louis E. Davis died before William O. Davis II and left Styleta K. Davis, his wife, surviving him. Appellants contend that no such separate estate is created by the language of clause A, but that the words "in case of the death of *either one* of my said grandsons, leaving no widow, etc.," refer to the first death of the grandsons and that the gift over to the other named grandchildren was dependent upon the *first* grandson who should die leaving no widow or child surviving him, and that Louis E. Davis having died first and having left a widow, Styleta K. Davis, the condition of defeasance failed and said other named grandchildren took nothing under said clause, and, of course, William O. Davis II took nothing as the surviving grandson for the same reason. Also, that by

the death of Louis E. Davis, leaving a widow surviving him, the condition of defeasance attached to the original gift of shares to William O. Davis II having failed and terminated, the vested remainder of William O. Davis II became absolute and upon his death all the shares originally bequeathed to him became intestate property and descended to his father, Hibbard O. Davis, as his only heir.

In our opinion, the words "death of either one" can refer only to the grandson who should first die, otherwise there would be no surviving brother to take the one-half of the shares mentioned; and the first part of clause A would be meaningless and of no avail. The fact that Louis E. Davis died leaving a widow can have no influence in ascertaining the true meaning of the words used. Nor can we acquiesce in the contention that the gift over to the other grandchildren was a separate independent executory bequest, independent of the preceding words in the clause. This clause is all in one sentence and that part of it containing the bequest over to the other grandchildren is connected with the preceding part by the conjunction "and." If we should eliminate unnecessary words, clause A, in substance, would read as follows: "In case of the death of either one of my said grandsons leaving no widow, etc., one-half of said shares of stock going to such deceased grandson shall go absolutely to his brother surviving him *and* the remaining half of said shares shall go to my other grandchildren, etc." It seems clear that the intention of the testator was, that in case one grandson predeceased the other, leaving no widow or child, then (1) one-half of the shares bequeathed to him under the will would go to the surviving brother *and* (2) the other half to the other grandchildren named. Any other construction would appear to be an unwarranted distortion of the meaning of the words used.

There is another reason, however, which strongly supports the conclusions above announced. Every

word, sentence and part of a will is presumed to have some meaning, force and vitality and should be given effect, if possible. Clause A pertains and applies to but one subject matter, that of the death of either one of said grandsons leaving no widow or child. Clause B applies and pertains to but one subject matter, that of the death of both grandsons leaving no widow or child. If Louis E. Davis had died *without* leaving a widow or child, then under clause A one-half of the shares of stock going to him under the will would have gone to his surviving brother, William O. Davis II, *absolutely,* and the latter would have taken an absolute estate in said shares of stock; but clause B provides that in case of the death of both Louis E. Davis and William O. Davis II without leaving any widow or child surviving them, then an entirely different disposition of said stock is to be made. William O. Davis II died without leaving any widow or child and under the conditions cited clauses A and B would become absolutely repugnant to each other and meaningless. Under this supposititious case which is exactly the case these clauses were designed to meet, if Louis E. Davis had died leaving no widow or child then William O. Davis II, under clause A, would have become the absolute owner of one-half of the shares of stock willed to his brother, but under clause B when William O. Davis II died leaving no widow or child, then the stock which he had already taken absolutely from his brother Louis, would be disposed of in other ways. The court will not presume that the testator intended in one clause of the will to give to a legatee the absolute ownership of the stock in question and then in another clause attempt to bequeath the same property to others, thus making these clauses repugnant to each other. ''All the clauses and words of the will must be construed as intended to have some meaning and to have been used for some purpose and must be given effect in arriving at the intention. None can be arbitrarily rejected as meaningless or surplusage. 'A

construction which requires the rejection of an entire clause in an instrument is not to be admitted except from absolute necessity.' *Winter v. Dibble,* 251 Ill. 200.'' *Hollenbaugh v. Smith supra.* As stated above, the will is drawn with care and particularity. Many bequests are made therein and many contingencies provided for in apt words. It is not reasonable to presume that the testator could have had any intention to give these clauses a meaning which would make them repugnant to each other in case the very conditions should happen which they respectively provided for and were framed to meet. The construction we have placed upon them can be arrived at within the fair meaning and intendment of the words used by the testator, harmonizes the two clauses, avoids any conflict or repugnancy between them, and gives full effect to each. The law favors the vesting of estates and unless it clearly appears, that such was not the intention of the testator, or if it is doubtful, that construction will be resorted to.

The only conditions of defeasance or divestiture of the vested remainders bequeathed to Louis E. Davis and William O. Davis II of the stock in question contained in the will of the testator are found in these clauses A and B and these conditions never having been consummated, but defeated by the fact of Louis E. Davis dying and leaving a wife surviving him, the legacies to Louis E. Davis and William O. Davis II became indefeasible and the vested remainders became absolute, and when William O. Davis II died he was the absolute owner of the shares of stock bequeathed to him under the will, and these passed, under the laws of descent, to his father, Hibbard O. Davis, as his only surviving heir.

The decree of the circuit court will be reversed and the cause remanded with directions to enter a decree in accordance with the conclusions herein expressed.

*Reversed and remanded.*