55  543
164s 398

John T. Turner and Parden B. Grover, Executors, etc.,
of Henry Kent, Deceased, v. George H. Wilson,
Administrator, etc., of Nancy C.
Kent, Deceased.

1. WILLS—*Rules of Construction.*—The question of first importance
in the construction of wills, is, what was the intention of the testator.
All rules of construction are regarded as having been devised for the sole
purpose of aiding courts to arrive at a correct solution of this question.

2. SAME—*Intention of Testator—How Ascertained.*—The intention
of a testator is to be ascertained from his whole will and all of its parts
taken together, from a full view and consideration of everything in the
instrument.

3. SAME—*First and Subsequent Clauses.*—Though a will in its first
clause may, by its express terms, so devise or bequeath real or personal
property that the devisee or donee would be vested with the fee or
absolute ownership, if the clause alone be considered, yet if it appears
from subsequent clauses, that the unmistakable intention of the testator
was to vest such donee or devisee with an estate for life only, with power
to dispose of or convey the property, and with remainder to specific
legatees, the latter clauses are to be construed as modifying the former,
and as qualifying and reducing the fee that is apparently donated to an
estate for life with power of disposal.

4. WIDOW'S AWARD—*Independent of the Will.*—The widow of a
testate person is entitled to her award under the statute, independent of
the will, as her sole, separate and absolute property.

Memorandum.—Assumpsit.  In the Circuit Court of Adams County;
the Hon. OSCAR P. BONNEY, Judge, presiding.  Declaration, common
counts; plea of general issue; jury waived; trial by the court; finding
and judgment for plaintiff; appeal by defendants.  Heard in this court
at the May term, 1894, and reversed.  Opinion filed October 29, 1894.

STATEMENT OF THE CASE.

Henry Kent, late of Adams county, died testate on the
13th day of August, 1879.  The provisions of his will mate-
rial to the case, are as follows:

" Fourth.  After the payment of my said debts and funeral
expenses, I give, devise and bequeath unto my wife, Nancy
C. Kent, one-half of all the personal property, money and
effects not hereinbefore otherwise disposed of, which I may

own or have a right to at the time of my death. And I also give, devise and bequeath to my said wife the farm upon which we—my wife and myself—now reside, for and during the term of her natural life, she to have all the rents, issues and profits growing out of or arising from the same, from the time of my death, for and during her natural life, whether such rents, issues and profits arise from a lease now made, or which may hereafter be made by me of said farm.

Fifth. It is my will that the remainder of the personal property, rights and effects of which I may die possessed, not hereinbefore disposed of, be sold by my executors, as soon as the same can conveniently be done after my death, in the manner and upon the terms hereinafter specified, and I hereby give, devise and bequeath the proceeds of such sale, after the proper expenses thereof are paid, to my nephews and nieces.

Sixth. It is my will that all the real estate of which I may die seized, as soon as can conveniently be done after the death of my said wife, be sold by my executors as hereinafter they are directed, and I hereby authorize and empower my said wife, after the expenses necessarily incurred in said sale are paid, to dispose of one-half of the proceeds of said sale by will, as to her may seem best. The remaining half of said proceeds of said sale, I give, devise and bequeath to my said nephews and nieces. ..

Seventh. In case my said wife shall not make disposition of half of said proceeds of said sale of said real estate, as it is hereinabove provided that she may do, then it is my will that said proceeds of said sale so left undisposed of, together with all the personal property hereby given my said wife absolutely, which at her death shall remain undisposed of, and also all the rents, issues and profits of the property hereby bequeathed to her, undisposed of at the time of her death, pass to and be divided between the nephews and nieces of my said wife, namely:   *   *   *

And I hereby constitute John T. Turner and Pardon B. Grover, both of said county, executors of this my last will and testament, hereby revoking and annulling all former

wills by me made, and ratifying, publishing and confirming this and none other, to be my last will and testament.

And I hereby authorize, empower and direct my said executors, as soon as can conveniently be done after my death, to sell all the personal property owned by me at the time of my death, not hereinbefore specially bequeathed to my said wife, and the said Edward K. Bodurtha and Henry Bodurtha, such sale to be made in the manner and after such advertisement as may seem to my said executors proper and advantageous for the interests of my said estate, and to make distribution of the proceeds of such sale as hereinbefore provided.

And I further authorize and direct my said executors, upon the death of my said wife, in case she shall survive me, or as soon thereafter as is practicable, to sell the real estate of which I may die seized, at public auction, upon the homestead where I now reside, first giving such notice of such sale, by advertisement, in such manner and for such time as my said executors, in the exercise of their best judgment, shall deem best calculated to secure the most advantageous sale of my said real estate; said real estate to be offered in such parcels as shall to my said executors seem best for the interests of all concerned, the payment or payments for said real estate so sold to be made as follows, to wit: One-fourth of the purchase money to be paid, cash in hand, and the remaining three-fourths to be paid in three equal installments, in one, two and three years respectively, from the day of such sale, such deferred payments to be secured upon the real estate so sold; and when said sale is made, to first pay out of the proceeds thereof all the proper and necessary expenses of said sale, and then to distribute one-half of the remainder of said proceeds to my said nephews and nieces, as hereinbefore provided, and in case my said wife shall not have disposed of the remainder of said proceeds, together with the personal property, rights and effects of which she shall become possessed hereby, and the increase, rents, issues and profits of property hereby bequeathed to her, by will, then it is my will that the same be

divided and distributed between the nephews and nieces of my said wife, hereinbefore named, as indicated by the provisions of this will, by my said executors.

In witness whereof, I, the said Henry Kent, have hereunto set my hand and seal, this the thirteenth day of January, A. D. 1876.

H. KENT. [SEAL.]"

Said Turner and Grover duly qualified as executors of the will. They also, from the time of Mr. Kent's death, which occurred August 13, 1879, acted as the agents of his widow, Nancy C. Kent. They ceased to be such agents some time in the year 1891, when Frederick J. White became their successor in such agency. In settling the estate they turned over all moneys coming to Mrs. Kent under the will to themselves as her agents. On September 2, 1879, they turned over to themselves as such agents $153.40, being a part of her widow's award. They also, with Mrs. Kent's consent, sold the whole of the personal property and turned over to themselves, as her agents, one-half of the proceeds of said sale, as follows: First, the sum of $120, and then the sum of $1,277.27½, making in all the sum of $1,397.27 held by them as her half of the proceeds of said sale.

During their agency they also rented for Mrs. Kent the farm in which she had a life estate, for $1,000 a year. Mrs. Kent did not use the whole of the proceeds of this rent, and whatever sum was not expended by her they retained as her agents. In 1891, Frederick J. White succeeded them as agent of Mrs. Kent. At that time Turner and Grover had in their possession moneys belonging to Mrs. Kent amounting to $4,208.38, which they paid to White. White acted as her agent until the time of her death, renting the farm for the same rent of $1,000 a year. At the time of her death, which occurred May 6, 1893, he had in his hands, as her agent, the sum of $3,573.12.

This sum he paid to Grover after Mrs. Kent's death, the latter receiving it in his capacity as executor of Henry Kent, deceased. George H. Wilson, the appellee, was appointed administrator of the estate of Mrs. Kent, and

Turner v. Wilson.

brought this, an action in assumpsit against Turner and Grover as executors of the estate of Heney Kent to recover the moneys paid Grover by White. The executors contended that Mrs. Kent, under the will of her husband, took a life estate only in the real and personal property devised and bequeathed to her with power of disposal, and that as the fund in question was not disposed of by her during her lifetime, by will or otherwise, it passed under the 7th clause to them as executors, and that it was their duty and right as executors to retain the money received from White, and distribute it to nephews and nieces of the testator entitled under the will to take it. The appellee contended that the sum of $153.40 paid Mrs. Kent on her widow's award was her absolute property, independent of the will, and that the will vested in her absolutely the proceeds of the sale of one-half of the personal property, and the rents, issues and profits of the farm. The cause was submitted to the court without a jury. The court found the issues for the appellee and rendered judgment in his favor as administrator for $1,430.67½. The executors prosecute this appeal.

APPELLANTS' BRIEF, J. F. CARROTT, ATTORNEY.

The intention of the testator is to be sought for and found in the provisions of his will, taking into consideration all its parts, and giving the language the sense in which it was used by him. For this purpose the court will look to every provision of the will, the better to understand the plan of distribution adopted, and the purpose of the testator in making a particular provision. Ebey et al. v. Adams et al., 135 Ill. 80; Horwitz v. Norris, 60 Pa. St. 261; Taubenhan et al. v. Dunz, 125 Ill. 524.

Was the devise in this will to Nancy C. Kent of the fee, or was it restricted by subsequent words in the will and changed to an estate for life? Appellant contended that the estate she took was limited to an estate for life, with power of disposition by will. Stuart v. Walker, 72 Me. 146, 39 Am. R. 311; Burleigh v. Clough, 52 N. H. 276, 13 Am. R. 23; Hatfield v. Sohier, 114 Mass. 48; Small v. Snow,

123 Mass. 323; Funk et al. v. Eggleston et al., 92 Ill. 515, 533; Hamlin et al. v. U. S. Express Co., 107 Ill. 443; Kaufman et al. v. Breckinridge et al., 117 Ill. 305, 316; In re Estate of Cashman, 134 Ill. 88, 92; Ducker et al. v. Burnham et al., 146 Ill. 9.

Where, in one part of a will there is given an estate of inheritance, or an absolute interest in personalty, and in subsequent passages the legatee clearly is to take a less estate, the gift is restricted accordingly. Sheets' Estate, 52 Pa. St. 263; Bergan et al. v. Cahill et al., 55 Ill. 160; Johnson et al. v. Johnson et al., 98 Ill. 564.

APPELLEE'S BRIEF, GEORGE H. WILSON, PRO SE, AND CARTER, GOVERT & PAPE, ATTORNEYS.

Where there remains nothing for a trustee to do but to pay over the amount to his *cestui que trust*, an action for money had and received may be maintained against him. Perry on Trusts, Sec. 843.

If a person has, with notice of the trust character of a fund, obtained the same from the trustee, or if, with notice, he has obtained pledged property from a pledgee, or stolen property from a thief, and reduced the same to money, an action for money had and received lies against him. An action for money had and received will lie whenever a defendant has received money which in justice belongs to the plaintiff, and which he should, in justice and right, return to the plaintiff. Mason v. Prendergast, 120 N. Y. 536; Allen v. Stenger, 74 Ill. 119; Belden v. Perkins, 78 Ill. 449; Harrison Machine Works v. Coillard, 26 Ill. App. 514; Buchter v. Dew, 39 Ill. 40; McDonald v. Brown, 16 Ill. 32.

Money in the hands of an agent, given him by the principal for safe keeping, has impressed upon it by the law a trust. And this trust is not confined to the period during which the money remains in the possession of the agent, but follows the fund into the hands of whomsoever it may come as long as it can be traced. Mechem on Agency, Sec. 780, etc.; Baker v. N. Y. Nat. Bank, 100 N. Y. 31; Central Nat. Bank v. Conn., etc., Co., 104 U. S. 54; Mason v. Waite, 17 Mass. 558.

Appellees, by intermeddling with the estate of Mrs. Kent, in taking possession of this fund became administrators *de son tort*, and as such, liable as trustees to the estate for the fund. 1 Perry on Trusts, Sec. 245; Truett Sons & Morgan v. Cummons, 6 Ill. App. 73; McConnell v. McConnell, 94 Ill. 295.

Where a person converts the property of another and afterward sells the same, the person whose property is converted can waive the tort and sue in assumpsit. And if the property is in any way consumed by the wrongdoer the owner can sue in assumpsit. City of Elgin v. Joslyn, 136 Ill. 535; Barnes v. Johnson, 84 Ill. 95; Merwin v. The City of Chicago, 45 Ill. 133; T. W. & W. Ry. Co. v. Chew, 67 Ill. 378; Whitton v. Barringer, 67 Ill. 551; Mayfield v. Moore, 53 Ill. 430; Harris v. Miner, 28 Ill. 140.

An action for money had and received will lie where money has been converted and is not confined to money produced by the sale of converted goods. McDonald v. Brown, 16 Ill. 32; Hindmarch v. Hoffman (Pa.), 18 Atl. Rep. 14.

The sum of $153.40 in cash, paid Nancy C. Kent on her widow's award, and afterward held by Turner and Grover, as her agents, was her absolute property, and was hers by virtue of the statute in such case made and provided, irrespective of the will of Henry Kent. 1 Starr & Curtis' Statutes, Chap. 3, Par. 74.

The proceeds of the sale of the personalty specifically bequeathed to Nancy C. Kent by the will of her husband were her absolute property:

(1.) Because the personalty was bequeathed to her in kind, and her consent to its sale and the subsequent sale under such authority were a disposition of it by her in her lifetime.

(2.) The personalty was bequeathed to Nancy C. Kent. absolutely, so that she had unqualified power of disposal. A limitation over of either real or personal property, after an absolute gift to the first taker, is repugnant to the first gift and void. 2 Jarman on Wills (5th Am. Ed.), 529, note 19; 2 Williams on Executors (6th Am. Ed.), 1376; 1 Redfield on Wills, 680; 2 Redfield on Wills (Ed. of 1866), Chap. 14, Sec.

65, Par. 33, p. 659; 2 Kent's Commentaries, 352; 4 Kent's Commentaries, 270; Wolfer v. Hemmer, 144 Ill. 554; Hamlin et al. v. U. S. Exp. Co., 107 Ill. 443; Welsch v. Belleville Savings Bank, 94 Ill. 203; Waldo v. Cummings, 45 Ill. 421; Fairman v. Beal, 14 Ill. 244; Howard v. Carusi, 109 U. S. 725; Ide v. Ide, 5 Mass. 500; Merrill v. Emery, 10 Pick. (Mass.) 507; Burbank v. Whitney, 24 Pick. (Mass.) 146; Gifford v. Choate, 100 Mass. 346; Jackson v. Coleman, 2 Johns. (N. Y.) 391; Jackson v. Bull, 10 Johns. (N. Y.) 18; Jackson v. Robins, 15 Johns. (N. Y.) 168; Jackson v. Robins, 16 Johns. (N. Y.) 586; McKenzie's Appeal, 41 Conn. 607; State v. Smith, 52 Conn. 562; Rona v. Meier, 47 Iowa 610; In re Will of Burbank, 69 Ia. 378; Bradley v. Piexoto, 3 Ves. Jr. 324; Diehl's Appeal, 36 Pa. St. 120; Jauretche v. Proctor, 48 Pa. St. 466; Jones v. Bacon, 68 Me. 34; 28 Am. Rep. 1; Pickering v. Langdon, 22 Me. 413; Ramsdell v. Ramsdell, 21 Me. 288; Stuart v. Walker, 72 Me. 146; 39 Am. Rep. 311.

MR. JUSTICE BOGGS DELIVERED THE OPINION OF THE COURT.

The real controversy presented by this record is as to the true construction of the will of Henry Kent, deceased.

The contention of the appellee is that the fourth clause of the will gives to the wife, Nancy C., as her absolute and sole property, one-half of the property of the testator, and all the rents, issues and profits accruing from the farm during the lifetime of the wife, and that a limitation of either personal or real property, after an absolute gift, is repugnant to the first gift and void. Hence, the argument is that the subsequent provisions of the will, directing the dispositions of such portions of the subject-matter of the gift as the wife should not dispose of during her life, are to be deemed inoperative and of no force or effect. We concede that numerous authorities supporting that view are to be found, in fact, many are cited by counsel for appellee, but we think that the trend of more modern adjudications is not in harmony with it. The question now of first importance in the construction of a will is, what was the intention of the testator. All mere rules of construction are regarded as having

been devised for the sole purpose of aiding the court to ar
rive at a correct solution of that question.   This intention
is to be ascertained from the whole will and all of its parts
taken together, from a full view and consideration of every-
thing within the " four corners " of the instrument.   Every
clause and provision is, if possible, to be given effect and
operation according to the wish of the testator.   The tend-
ency of American decisions is to reconcile every apparent
repugnancy, so much so, that Mr. Redfield, in his work on
Wills (p. 453), was moved to declare " that it is now becom-
ing very uncommon with us to hear a court declare a will,
or any of its provisions, wholly inoperative by reason of
repugnancy or uncertainty."   The rejection of a clause in a
will was denominated in Jenks v. Jackson, 127 Ill. 341, " A
desperate remedy to be resorted to only in case of necessity."
The primary consideration, it was said in Walker v. Pritch-
ard, 121 Ill. 221, " is the ascertainment of the intention of
the testator, and it is wholly immaterial in what part of the
will the words are found which indicate such intention."
While the appellee may well insist that the 4th clause of
the will, if considered independently of all others, vested
absolute property and ownership in the wife, still a careful
consideration of the whole will and of each provision, dis-
closes very unmistakably that such was not the intention of
the testator, but that he had in view a different disposition
of so much of the property given to the wife as she
might not use, consume or dispose of during her lifetime.
This purpose he attempted to carry out by the different pro-
visions of his will, and we think there is no inflexible rule
which operates to render his effort nugatory.   The rule, as
we think it ought to be, and believe it now to be, is, that
though a will in its first clause may by its express terms so
devise or bequeath real or personal property that the dev-
isee or donee would be vested with the fee or absolute
ownership if the clause alone be considered, yet if it appears
from subsequent clauses of the will that the unmistakable
intention of the testator was to vest such donee or devisee
with an estate for life only, with power to dispose of or con-
vey the property, and with remainder over to specific lega-

tees, the latter clauses are not to be declared inoperative, but are to be considered as modifying the former, and as qualifying and reducing the fee that is apparently donated to an estate for life, with power of disposal. This view is supported, as we think, by Hamlin v. U. S. Express Co., 107 Ill. 443; Walker v. Pritchard, 141 Ill. 221; Siddons v. Cockrell, 131 Ill. 653. Therefore it is our opinion that Nancy Kent, by the will in question, took only a life estate in the personal property bequeathed to her, and in the rents collected from the farm with power of disposal. Nor do we think the sale made of the personal property by the executors with the consent of Mrs. Kent is to be deemed a disposition of the property by her. Personal property could not well be held and enjoyed in common by the widow and the executors. The sale was made, no doubt, out of convenience or from the necessities of the case, and not with the view upon the part of Mrs. Kent of disposing of the property in the sense in which she had the right to dispose of it under the will. It is clear that she did not so regard the sale, for she made no distinction between the funds procured by the sale and funds accruing from rents of the farm, but suffered them to be mingled together, and all must, we think, be regarded as alike remaining undisposed of within the meaning of the will. Mrs. Kent received from the executors the sum of $153.40, balance of her award as widow under the statute. She was entitled to this independent of the will, and it became her sole, separate and absolute property. She, however, made no distinction between it and the other moneys, in which she had but a qualified interest. All, with her knowledge and acquiescence, was mingled together and became indistinguishable. She drew from the intermingled fund indiscriminately, and evidently had no intent to preserve intact that which she owned absolutely. It is beyond the power of a court now to separate it, or to say that she did not use it during her lifetime, as she used a much greater amount from the fund.

It follows from what has been said that in our opinion the judgment of the Circuit Court can not be maintained. It is therefore reversed, and the cause will not be remanded.